IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| **CHRISTOPHER FEAMSTER, ROBERT MIHALIC, and EARL JEANSONNE,** individually and on behalf of all similarly situated individuals,<br><br>          Plaintiffs,<br>v.<br><br>**COMPUCOM SYSTEMS, INC.,** a Texas Corporation,<br><br>  Serve:  Corporation Service Company, Registered Agent<br>          Bank of America Center, 16th Floor<br>          1111 East Main Street<br>          Richmond, VA 23219<br><br>          Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 7:15-cv-00564<br>Civil Action No. 7:15at99999<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |

**PLAINTIFFS' COLLECTIVE AND
CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs, Christopher Feamster, Robert Mihalic and Earl Jeansonne ("Plaintiffs"), individually and on behalf of all other similarly situated employees, by and through their undersigned attorneys, bring this Complaint against Defendant, CompuCom Systems, Inc. ("Defendant"), and state as follows:

**INTRODUCTION**

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, on behalf of themselves and all similarly situated persons employed by Defendant, which arises from Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA").

2. Additionally, Plaintiffs assert a class action claim pursuant to Fed. R. Civ. P. 23,

1

in accordance with contract law arising under state common law.

3. Specifically, Plaintiffs and the putative Class contend that Defendant violated the FLSA, as well as state contract law, by knowingly suffering or permitting them to work more than 40 hours per week without paying them overtime compensation at a rate of one-and-one-half times their regular rates of pay.

4. Defendant, CompuCom System, Inc., is engaged in the business of providing computer technical service and technical resources to businesses nationwide. Through more than one hundred locations nationwide, Defendant "resells, and supports the hardware and software of the IT industry's leading manufacturers including (but not limited to) HP, Dell, Cisco, Lenovo, Apple, Nutanix, Nimble, Microsoft, VMware, and Red Hat."

*See* http://www.compucom.com/products-solutions (last visited September 16, 2015).

5. In addition to other job classifications, Defendant employs "Field Services Technicians" who perform "on-site" service, maintenance, technical support, repair and/or installation duties for Defendant's customers. (*Exhibit A*, job postings obtained on Defendant's website).

6. Defendant's on-site Field Services Technicians, including Plaintiffs and the putative Class, are non-exempt employees who are paid on an hourly basis.

7. Defendant's on-site Field Services Technicians, including Plaintiffs and the putative Class members, were required to routinely perform principal work activities for Defendant and Defendant's customers "off-the-clock," without compensation.

8. These principal work activities, which were typically performed by Plaintiffs and the putative Class at home prior to their first scheduled "on-site" customer assignment and at home after completion of their last scheduled "on-site" customer assignment, included, but were

2

not limited to:

    a. Logging into/out of Defendant's computer systems;

    b. Reviewing and/or sending e-mails, chat messages, or text messages from/to Defendant and/or Defendant's customers;

    c. Communicating with Defendant's employees/supervisors/managers by telephone;

    d. Communicating with Defendant's customers by telephone;

    e. Providing technical support guidance to Defendant's employees and Defendant's customers;

    f. Monitoring, documenting, and tracking customer IT problems;

    g. Accessing Defendant's problem management databases and/or help desk system;

    h. Studying work documents including instructions, guidelines, and training aides;

    i. Performing work assisting Defendant's overseas IT support teams; and

    j. Preparing reports and/or "tickets".

9. The activities are integral and indispensable to Defendant's business and Defendant required its on-site Field Services Technicians to perform these tasks.

10. In addition to failing to pay Plaintiffs and the putative Class for the "off-the-clock" work set forth above, Defendant fails and refuses to compensate its on-site Field Services Technicians for the drive time that they incur at the beginning of each shift travelling from their homes to their first scheduled "on-site" customer assignment, and for the drive time that they incur at the end of each shift travelling to their homes from their last scheduled "on-site" customer assignment.

11. The Portal-to-Portal Act and 29 CFR §§ 785.33 to 785.35 are clear that an employee's regular daily commute to and from their office or place of work is not compensable work time. *See, e.g.,* 29 CFR § 785.35 ("Normal travel from home to work is not worktime.").

3

Case 7:15-cv-00564-GEC   Document 1   Filed 10/20/15   Page 3 of 18   Pageid#: 3

12. However, under the Portal-to-Portal Act time spent traveling subsequent to commencement of an employee's workday or prior to conclusion of the employee's workday (like that travel done by Plaintiffs to their first scheduled "on-site" customer assignment and home from their last scheduled "on-site" customer assignment) is considered part of the employee's principal work activities, and thus, is compensable. Specifically, 29 CFR § 785.38 (Travel that is all in the day's work), states as follows: "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked...."

13. The named Plaintiffs are current or former on-site Field Services Technicians who worked for Defendant on an hourly basis in Virginia (Plaintiff Christopher Feamster), Tennessee (Plaintiff Robert Mihalic), and Louisiana (Plaintiff Earl Jeansonne).

14. Plaintiffs bring this action on behalf of themselves and all other similarly situated on-site Field Services Technicians of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

16. Defendant's annual sales exceed $500,000.00 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's on-site Field Services Technicians engage in interstate commerce and therefore they are also covered by the

4

FLSA on an individual basis.

17. This Court has jurisdiction over Plaintiffs' state law claim pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000.00 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendants are citizens of different states.

18. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because those claims arise out of the same set of operative facts as Plaintiffs' FLSA claims and would be expected to be tried in a single judicial proceeding with the federal claims.

19. This court has personal jurisdiction over Defendant because it does business within the state of Virginia and is registered with the Virginia State Corporation Commission.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant conducts substantial business within this District, and because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

**PARTIES**

21. Plaintiff and the putative Class members are current and/or former on-site Field Services Technician employees of Defendant and performed work for Defendant's customers around the country.

22. Plaintiff Christopher Feamster resides in Blacksburg, Virginia. Mr. Feamster was employed by Defendant in Virginia as an on-site Field Services Technician from April 26, 2014, to June 5, 2015, and has filed his consent form, which is attached hereto as *Exhibit B*.

23. Plaintiff Robert Mihalic resides in Knoxville, Tennessee. Mr. Mihalic was employed by Defendant in Tennessee as an on-site Field Services Technician from May 2013 to May 2015 and has filed his consent form, which is attached hereto as *Exhibit C*.

24. Plaintiff Earl Jeansonne resides in Alexandria, Louisiana. Mr. Jeansonne has been employed by Defendant in Louisiana as an on-site Field Services Technician since May 2014 and has filed his consent form, which is attached hereto as *Exhibit D*.

25. Defendant is headquartered in Texas at 7171 Forest Lane, Dallas, Texas 75230.

26. Defendant does business in Virginia and may be served by way of its registered agent, Corporation Service Company, at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia, 23219.

**GENERAL ALLEGATIONS**

27. Plaintiffs and members of the putative Class were employed by Defendant as on-site Field Services Technicians, who regularly worked more than forty (40) hours per week.

28. Plaintiffs and the putative Class members are non-exempt employees who were/are paid on an hourly basis.

29. Defendant's on-site Field Services Technicians, including Plaintiffs and the putative Class members, were required to routinely perform principal work activities for Defendant and Defendant's customers "off-the-clock," without compensation.

30. These principal work activities, which were typically performed by Plaintiffs and the putative Class at home prior to their first scheduled "on-site" customer assignment and at home after completion of their last scheduled "on-site" customer assignment, included, but were not limited to:

6

a. Logging into/out of Defendant's computer systems;

b. Reviewing and/or sending e-mails, chat messages, or text messages from/to Defendant and/or Defendant's customers;

c. Communicating with Defendant's employees/supervisors/managers by telephone;

d. Communicating with Defendant's customers by telephone;

e. Providing technical support guidance to Defendant's employees and Defendant's customers;

f. Monitoring, documenting, and tracking customer IT problems;

g. Accessing Defendant's problem management databases and/or help desk system;

h. Studying work documents including instructions, guidelines, and training aides;

i. Performing work assisting Defendant's overseas IT support teams; and

j. Preparing reports and/or "tickets."

31. These activities are integral and indispensable to Defendant's business and Defendant required its on-site Field Services Technicians to perform these tasks.

32. On average these at-home work duties took Plaintiffs 1 to 2 hours per day.

33. In addition to failing to pay Plaintiffs and the putative Class for the "off-the-clock" work set forth above, Defendant fails and refuses to compensate its on-site Field Services Technicians for the drive time that they incur at the beginning of each shift travelling from their homes to their first scheduled "on-site" customer assignment, and for the drive time that they incur at the end of each shift travelling to their homes from their last scheduled "on-site" customer assignment.

34. On average Plaintiffs engaged in compensable drive time in the amount of 1 to 1.5 hours per day.

35. In total, Plaintiffs and the putative Class members worked no less than 10 hours

7

Case 7:15-cv-00564-GEC   Document 1   Filed 10/20/15   Page 7 of 18   Pageid#: 7

each week "off-the-clock" and, upon information and belief, worked in excess of 10 hours "off-the-clock" in many weeks.

36. Pursuant to FLSA, the Portal-to-Portal Act, and state contract law, Defendant was obligated to compensate Plaintiffs and the putative Class members for the time they spent working off-the-clock, including their drive time subsequent to commencement of their workday and prior to conclusion of their work day, and were obligated to pay the compensation in the form of overtime at a rate of one and one-half times the employees regular hourly rate.

37. In *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), the Supreme Court relied on the definition of "workday" from the Portal-to-Portal Act to determine when time was compensable. Citing to 29 C.F.R. § 790.6(b), the *Alvarez* Court held that "during a continuous workday," the time between when an initial principal activity is undertaken and completion of the concluding principal activity falls outside of the Portal-to-Portal Act's limitations on compensable activity, and thus is compensable under the FLSA. *Id*. at 37.

38. Instead of paying overtime wages for the time worked in excess of 40 hours, Defendant failed to comply with the overtime provisions of the FLSA (as well as the Portal-to-Portal Act and state contract law) and, in fact, failed to pay Plaintiffs and the putative Class members for their off-the-clock work.

39. Further, Defendant specifically informed Plaintiffs and the putative Class members that they would not be paid for the work they performed from home.

40. Defendant had knowledge that Plaintiff and the putative Class members regularly worked more than 40 hours per week because Defendant required its on-site Field Services Technicians to perform off-the-clock work, including those tasks referenced above, and Defendant specifically instructed its on-site Field Services Technicians that they would not be

compensated for their off-the-clock work.

41. Additionally, Defendant's computer systems and records reflect off-the-clock tasks being performed by its on-site Field Services Technicians including, but not limited to, the on-site Field Services Technicians':

   a. Logging into/out of Defendant's computer systems;

   b. Reviewing and/or sending e-mails, chat messages or text messages from/to Defendant and/or Defendant's customers;

   c. Communicating with Defendant's employees/supervisors/managers by telephone;

   d. Communicating with Defendant's customers by telephone;

   e. Providing technical support guidance to Defendant's employees and Defendant's customers;

   f. Monitoring, documenting and tracking customer IT problems;

   g. Accessing Defendant's problem management databases and/or help desk system;

   h. Studying work documents including instructions, guidelines and training aides;

   i. Performing work assisting Defendant's overseas IT support teams; and

   j. Preparing reports and/or "tickets."

42. Defendant knew or should have known the FLSA requires businesses such as Defendant's to pay for all work performed, including off-the-clock work.

43. Likewise, Defendant knew or should have known the Portal-to-Portal Act requires businesses to compensate employees for drive time subsequent to commencement of their principal work activities for the day and prior to conclusion of their principal work activities for the day.

44. Nevertheless, in reckless disregard of the FLSA, the Portal-to-Portal Act, and contract law arising under state contract law, Defendant adopted and then adhered to its policy

9

and practice of suffering or permitting its on-site Field Services Technician employees to work off-the-clock without pay. As a result, Plaintiffs and all other similarly situated employees were denied overtime compensation due to them under the law.

## COLLECTIVE ACTION ALLEGATIONS

45. Plaintiffs bring this action pursuant to the FLSA, 29 U.S.C. § 216(b) on their own behalf and on behalf of all similarly situated current and former on-site Field Services Technician employees of Defendant who are or were employed at any time in the past three years, worked over 40 hours per week, and were not paid overtime for hours worked over 40 in any workweek.

46. Plaintiffs do not bring this action on behalf of any executive, administrative, professional, or computer-related employees exempt from coverage under the FLSA.

47. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the employees described are "similarly situated" to Plaintiffs. The putative Class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same legal theory.

48. Plaintiffs estimate the collective Class, including both current and former employees over the relevant period, will include hundreds, if not over a thousand, individuals. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

49. The status of all individuals similarly situated to Plaintiffs raises an identical legal

question: whether Defendant improperly suffered or permitted its on-site Field Services Technician employees to work off-the-clock without pay.

50. Plaintiffs share the same interests in resolving these factual and legal questions as to every other similarly situated Class member, and each Class member's entitlement to overtime pay in this suit will hinge on the common resolution of this core question.

51. The Class of similarly situated employees in this case under the FLSA, 29 U.S.C. § 216(b), is defined as follows:

> *All individuals who were employed by CompuCom Systems, Inc., in the on-site Field Services Technician or equivalent position during the past three years.*

52. Given the material similarity of the putative Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds (or thousands) of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a collective action would permit the efficient supervision of the putative Class members' claims, create significant economies of scale for the Court and the parties and result in a binding and uniform adjudication on all issues.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All individuals who at any time during the applicable statutory period were employed by CompuCom Systems, Inc., in the on-site Field Services Technician or equivalent position.*

11

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

54. *Numerosity*: The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

55. *Commonality/Predominance:* There is a well-defined community of interest among Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions, include, but are not limited to, whether Defendant improperly suffered or permitted its on-site Field Services Technician employees to work off-the-clock without pay and whether Defendant's violations were willful.

56. *Typicality:* Plaintiffs' claims are typical of claims of the Class they seek to represent in that Plaintiffs and all other Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from Defendant's similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

57. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Class and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Class.

58. *Superiority:* A class action is superior to other available methods for the fair and

efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

59. The case will be manageable as a class action. Plaintiffs and their counsel know of no unusual difficulties in the case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

60. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

61. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I:
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*.
## FAILURE TO PAY OVERTIME WAGES

62. Plaintiffs re-allege and incorporate all previous paragraphs herein.

63. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

64. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

65. At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

66. Plaintiffs were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

67. Defendant's on-site Field Services Technician position is not exempt from the FLSA.

68. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

69. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

70. Plaintiffs and the putative Class members, as part of their jobs as on-site Field Services Technicians, regularly worked more than 40 hours per week without receiving overtime pay.

71. Defendant violated the FLSA by failing to pay Plaintiffs and the putative Class members the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

72. Upon information and belief, Defendant has corporate policies and practices of evading overtime pay for its on-site Field Services Technicians.

73. Defendant's violations of the FLSA were knowing and willful.

74. By failing to compensate its workers at a rate not less than one-and-one-half times their regular rate of pay for work performed in excess of forty hours in a workweek, Defendant

violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated employees are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform practice, in violation of the FLSA, has been, and continues to be, applied to all employees who worked or are working for Defendant in the same or similar position as Plaintiffs.

75. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, attorneys' fees and costs.

## COUNT II:
## RULE 23 NATIONWIDE CLASS ACTION – BREACH OF CONTRACT

76. Plaintiffs re-allege and incorporate all previous paragraphs herein.

77. At all times relevant to this action, Defendant had a contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

78. Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

79. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, have an hourly rate that exceeds $14.00 per hour.

80. Plaintiffs and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the "off-the-clock" work activities (including those associated with: 1) travelling to/from customer assignments; 2) working at home prior to their first scheduled "on-site" customer assignment; and 3) working at home after completion of their

15

last scheduled "on-site" customer assignment) that Defendant required or accepted.

81. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for these "off-the-clock" work activities, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

82. Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

83. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing "off-the-clock" work activities (including those associated with: 1) travelling to/from customer assignments; 2) working at home prior to their first scheduled "on-site" customer assignment; and 3) working at home after completion of their last scheduled "on-site" customer assignment).

84. The contracts and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

85. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Nationwide Class has been damaged, in an amount to be determined at trial.

86. These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. §

216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c. Designating Plaintiffs as Class Representatives of the FLSA and Rule 23 Nationwide classes;

d. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e. Declaring Defendant violated the FLSA, the Portal-to-Portal Act, and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs the collective action Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Christopher Feamster, Robert Mihalic, and Earl Jeansonne, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes

made and provided with respect to the above entitled cause.

          Respectfully Submitted,

          CHRISTOPHER FEAMSTER, ROBERT
          MIHALIC, and EARL JEANSONNE

          By:\_\_\_s/Cindra M. Dowd_____
            Of Counsel

          Cindra M. Dowd (VSB No. 33819)
          Richard J. Serpe (VSB No. 33340)
          LAW OFFICES OF RICHARD J. SERPE, P.C.
          580 E. Main Street, Suite 310
          Norfolk, VA 23510
          Telephone: (757) 233-0009
          Fax: (757) 233-0455
          cdowd@serpefirm.com
          rserpe@serpefirm.com

          *Local Counsel for Plaintiffs*

          and

          Pending Pro Hac Admission:

          Kevin J. Stoops (MI Bar No. 64371)
          Jesse L. Young (MI Bar No. 72614)
          SOMMERS SCHWARTZ, P.C.
          One Towne Square, Suite 1700
          Southfield, MI 48076
          Telephone: (248) 355-0300
          Fax: (248) 936-2138
          jthompson@sommerspc.com
          jyoung@sommerspc.com

          Timothy J. Becker (MN Bar No. 256663)
          Jacob R. Rusch (MN Bar No. 391892)
          JOHNSON BECKER, PLLC
          33 South Sixth Street, Suite 4530
          Minneapolis, MN 55402
          Telephone: (612) 436-1800
          Fax: (612) 436-1801
          tbecker@johnsonbecker.com
          jrusch@johnsonbecker.com

          *Trial Counsel for Plaintiffs*